UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HULITT SHERRARD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:13-CV-1015-CEJ |
| ) | |
| THE BOEING CO., ) | |
| ) | |
| Defendant. | |

_____

| | |
|---|---|
| LISA SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14-CV-14-CEJ |
| ) | |
| THE BOEING CO., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Before the Court are the plaintiffs' motions to enforce settlement agreements. Defendant had responded in opposition to the motions, and the issues are fully briefed.

### **I. Background**

The putative class actions of plaintiffs Demonicel Jackson, Hulitt Sherrard, and Lisa Simpson against defendant The Boeing Company were consolidated for purposes of Phase I, pre-class certification discovery. Plaintiffs were required to file any motions for class certification by February 19, 2016. Dispositive motions with respect to the claims alleged by the named plaintiffs in their individual capacities were due on that same date. Plaintiffs did not file a motion for class certification in either case, nor did they move for summary judgment on their individual claims. Defendant

timely moved for summary judgment.

On March 15, while defendant's motions were awaiting full briefing, plaintiffs filed notices stating that the parties had "entered into a settlement agreement" in both cases, but that they needed time to "prepare and finalize the settlement documents and release[s]."[1] [Doc. #69] The Court ordered the parties to file stipulations for dismissal by April 15, and consequently ruled that defendants' motions for summary judgment were moot. On April 15 and May 13, plaintiffs moved for extensions of time, asserting in each instance that the parties were still "working on finalizing the settlement documents," which they required additional time to "execute." [Docs. ##71, 73] The Court granted those motions, ultimately extending the deadline to file the stipulations for dismissal to June 17.

On June 16, however, plaintiffs filed the instant motions. According to plaintiffs, an email thread between the parties' attorneys constitutes a binding settlement agreement. On February 18, plaintiffs' counsel, Ryan Furniss, emailed defendant's counsel, Daniel O'Keefe, regarding, "Sherrard/Simpson v. Boeing – Settlement Discussion." [Doc. #78-3 at 3] Plaintiffs offered to settle "this case" in exchange for defendant's agreement to pay each of them an identical sum. *Id.* The precise terms of plaintiffs' settlement offer are not detailed in that email.

O'Keefe responded, rejecting plaintiffs' offer and countering with an "offer" to pay each named plaintiff an identical, lesser sum, "conditioned on all three plaintiffs accepting." [Doc. #75-1 at 2] Apart from accepting the money, the emails did not specify what the plaintiffs would be obliged to do in return.

---

[1]The parties advance the same arguments, and cite the same evidence, in support and opposition to both motions. For simplicity the Court cites to the record in *Sherrard*, 4:13-CV-1015-CEJ.

2

On February 27, Jason Charpentier, another of plaintiffs' attorneys, responded with, "authority to settle all three plaintiffs for" equal sums. *Id.* at 1. O'Keefe replied: "[C]an Sherrard settle his claim [with] his bankruptcy filing? Or has he conferred with the trustee?" *Id.* Charpentier responded that both Sherrard "and a trustee have signed off on the settlement." *Id.* O'Keefe wrote back: "Great. Thanks. I will inform Boeing on Monday and we can pull together the paperwork." *Id.* Charpentier replied: "Thanks[;] enjoy the weather this weekend." [Doc. #78-3 at 1] Nowhere in that exchange is there any discussion of whether a settlement would include a release of all of the individual plaintiffs' claims. Nor, relatedly, did emails address whether the named plaintiffs would be required to dismiss their individual claims with or without prejudice.

On April 4, O'Keefe emailed Charpentier and Furniss "draft settlement agreements." [Doc. #78-5] Subsequent emails detail the parties' efforts to agree on "draft releases" and "draft settlement agreements" for each plaintiff. [Docs. ##78-4, 78-5] To date, none of the plaintiffs has executed any of those documents, and plaintiffs' counsel has stated that "Sherrard will not" do so. [Doc. #78-8] The contents of the documents and the parties' disputes over them are thus irrelevant to whether the emails are sufficient standing alone to create a binding contract.

Plaintiffs contend that the emails form a contract to settle all three named plaintiffs' claims for equal sums in exchange for a "full release of liability and a dismissal of all claims with prejudice." [Doc. #76 at 5] As noted, however, nowhere in that exchange do the parties discuss, let alone agree to, a release of claims, the scope of any such release, or whether plaintiffs would dismiss their claims with prejudice.

3

## II. Discussion

### A. Legal Standard

Courts have the inherent power to enforce a settlement agreement entered into by the parties in a pending case. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). Settlement agreements are governed by contract law. *Chaganti & Assocs., PC v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006). For a settlement agreement to be enforceable, the parties must have reached agreement on the material terms of the deal. *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997). "Settlement agreements that do not expressly resolve ancillary issues can, nevertheless, be enforceable." *Id.* Hence, "that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* To determine whether an unresolved issue is "material" or "ancillary," courts looks to the intent of the parties. *Worthy v. McKesson Corp.*, 756 F.2d 1370, 1372 (8th Cir. 1985). The party requesting enforcement of a settlement agreement has the burden of proving its claim for relief by "clear, convincing, and satisfactory evidence that there was an agreement" before a court will enforce it. *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1053 (8th Cir. 2003) (quotation marks and citations omitted); *see Vulgamott v. Perry*, 154 S.W.3d 382, 388 (Mo. Ct. App. 2004) (same).

### B. Evidentiary Hearing

"As a general rule, an evidentiary hearing should be held when there is a substantial factual dispute over the existence or terms of a settlement." *Bath Junkie Branson, LLC v. Bath Junkie, Inc.*, 528 F.3d 556, 561 (8th Cir. 2008) (quotation marks, bracketing, and citation omitted). "But this rule presupposes that there are

4

essential issues of fact that can only be properly resolved by such a hearing." *Id.* (quotation marks and citation omitted). No hearing is required where the written record suffices to decide the dispositive issues. *See id.*

Plaintiffs do not contend that any oral communications between the parties or their counsel bear on whether a settlement was reached. They instead maintain that a binding contract between plaintiffs and defendant is present on the four corners of the emails between their respective counsel. The Court therefore does not consider the evidence of the parties' oral negotiations. It is also undisputed that the attorneys were acting within the scope of their agency at all relevant times, and could thus bind their clients to a contract. *See Chaganti*, 470 F.3d at 1222–23. Consequently, no evidentiary hearing or credibility determinations are necessary to resolve the instant motions. *See Bath Junkie Branson*, 528 F.3d at 561.

### C. Existence of a Contract

The parties rely on Missouri law as to the existence and enforceability of a settlement agreement. In a case raising both federal and state antidiscrimination law claims, as here, the Eighth Circuit has assumed, without deciding, that where the parties agree that state law controls whether a settlement was reached, courts apply the relevant state law, "leav[ing] the larger choice of law question for another day." *Sheng*, 117 F.3d at 1083 n.1. Consequently, because "[b]oth parties rely on Missouri law," the Court "assume[s] that Missouri law controls" whether a settlement was reached. *Bath Junkie Branson*, 528 F.3d at 564 n.4.

Under Missouri law, "[t]he essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement."

5

*Chaganti*, 470 F.3d at 1221 (quoting *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995)). Here, as in *Chaganti*, "[t]here is no dispute that the alleged settlement was made by parties competent to contract, and the subject matter is proper." *Id.* The extant issues are mutuality of agreement and obligation, and consideration. *See id.* In other words, the question is whether the parties' written communications evidence "offer, acceptance, and bargained for consideration." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc) (quotation marks and citations omitted).

"The nature and extent of a contract's essential terms which form the basis of the parties' mutual assent must be certain or capable of being certain." *Bath Junkie Branson*, 528 F.3d at 561 (quotation marks and citation omitted). "The mutuality or meeting of minds is to be determined by the expressed, and not by the secret, intention of the parties." *Id.* (quoting *Butler v. Mo. Ins. Co.*, 187 S.W.2d 56, 60 (Mo. Ct. App. 1945)). "Therefore, even if a party may have subjectively believed that it had outstanding important contractual terms, a court will still enforce a settlement agreement that the record reflects contains all material terms." *Id.* at 562 (citations omitted). In turn, a party's "[i]ntent is a question of fact." *Worthy*, 756 F.2d at 1372 (citation omitted).

"A 'material term' is defined as '[a] contractual provision dealing with a significant issue such as subject matter, price, [or] payment.'" *Bath Junkie Branson*, 528 F.3d at 564 n.6 (quoting *Black's Law Dictionary* 1510 (8th ed. 2004)); *see Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995) ("The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement." (quoting Restatement (Second) of Contracts § 33 cmt. c (Am. Law Inst.

1981)). Whether material terms are missing from an agreement depends, in part, on whether the existing terms "produce a reasonably ascertainable objective meaning," or if other essential information would be needed to give effect to those terms. *Visiting Nurse Ass'n*, 347 F.3d at 1054; *see Grant v. Sears*, 379 S.W.3d 905, 916 (Mo. Ct. App. 2012) ("A mutual agreement is reached when the minds of the contracting parties . . . meet upon and assent to the same thing in the same sense at the same time."). Another question that bears on whether material terms are missing is whether, under the existing terms, the alleged agreement "is specific enough to determine when one of the parties is in breach and provides a basis for giving a remedy." *Visiting Nurse Ass'n*, 347 F.3d at 1054 (citations omitted); *see Vulgamott*, 154 S.W.3d at 390–91.

In the context of a putative settlement agreement, "[m]aterial terms are those terms that the settlement hinges upon." *Kayira v. Hilco Receivables, LLC*, No. 4:08-CV-1184-CEJ, 2009 WL 211952, at *1 (E.D. Mo. Jan. 26, 2009). Thus, whether or not a settlement "extinguish[es] all claims" and "resolve[s] all issues in a case"—*i.e.*, releases a defendant from all liability and thus operates to dismiss a plaintiff's claims with prejudice—is material. *Worthy*, 756 F.2d at 1371–73 (quotation marks and citation omitted); *see Sheng*, 117 F.3d at 1082 (recognizing that the parties' agreement that a plaintiff "would dismiss all of her claims" in exchange for a sum certain were material terms of an alleged settlement agreement); *Tirmenstein v. Cent. States Basement & Found. Repair, Inc.*, 148 S.W.3d 849, 851 (Mo. Ct. App. 2004) (holding no settlement agreement existed where the evidence did not prove the parties mutually assented on the material term of the scope of any release).

7

The emails reveal that the parties failed to reach an agreement on all material terms. Of course, what plaintiffs were agreeing to do in exchange for accepting the money from defendant is a material term. The parties' discussions involved settlement of either the named plaintiffs' claims, or the case, or both. Consequently, whether they reached a mutual agreement as to the meaning of "settlement" is material. For example, whether plaintiffs could satisfy the "settlement" term by dismissing their claims without prejudice is an essential issue on which the emails are silent. *See Visiting Nurse Ass'n*, 347 F.3d at 1054. It is also not discernable from the emails whether a settlement required defendant to admit liability or, on the other hand, required plaintiffs to release it from liability for some or all claims. *See id.*

Plaintiffs argue that the parties agreed that a "settlement" meant a "full release of liability and a dismissal of all claims with prejudice." [Doc. #76 at 5] But nowhere in the emails do the parties discuss the scope and specifics of, let alone agree to, any release of liability. Nor do they discuss and agree to a dismissal of all of the named plaintiffs' claims with prejudice. Those material terms required further negotiation, as the parties' dispute over the draft settlement agreement demonstrates.

The parties' written communications do not evidence they reached a meeting of the minds on the meaning of a settlement. Consequently, they did not reach accord on the material issue of what obligations plaintiffs would incur for accepting the proffered funds. Because they did not, the Court finds that plaintiffs have not met their burden to establish by clear, convincing, and satisfactory evidence that a settlement agreement exists, and their motion will be denied.

****

For the reasons discussed above,

**IT IS HEREBY ORDERED** that plaintiffs' motions to enforce settlement agreements [4:13-CV-1015-CEJ, Doc. #75; 4:14-CV-14-CEJ, Doc. #62] are **denied**.

**IT IS FURTHER ORDERED** that defendant's motions for summary judgment [4:13-CV-1015-CEJ, Docs. ##63, 66; 4:14-CV-14-CEJ, Doc. #53] are **reinstated**.

**IT IS FURTHER ORDERED** that plaintiffs' responses in opposition to defendant's motions for summary judgment are due on **August 16, 2016**; defendant's replies in support of the motions will be due **fourteen days** after the responses are filed.

**IT IS FURTHER ORDERED** that trial dates will be scheduled, if necessary, following disposition of defendant's motions for summary judgment.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2016.